```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/18/07
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN  DISTRICT OF NEW YORK**
-----------------------------------------------------------X

NATIONAL UNION FIRE INSURANCE  :
COMPANY OF LOUISIANA, AI MARINE  :
ADJUSTERS, INC., NAVIGATORS  :
INSURANCE SERVICES OF TEXAS, INC.  :
and MARINE OFFICE OF AMERICA  :
CORPORATION,  :
 :
        **Plaintiffs,**  :
 :
 :  **OPINION AND ORDER**
    - against -  :
 :  **05 Civ. 3418 (SAS)**
UNIVERSAL FABRICATORS, INC.,  :
GENERAL STAR NATIONAL INSURANCE  :
COMPANY, NEW YORK MARINE AND  :
GENERAL INSURANCE COMPANY,  :
MUTUAL MARINE OFFICE, INC. and  :
AMERICAN ALTERNATIVE INSURANCE  :
GROUP,  :
 :
        **Defendants.**  :
----------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

      The present dispute involves New York Marine and General

Insurance Company and Mutual Marine Office, Inc. (collectively, "Mutual

Marine"), as primary insurer, and General Star National Insurance Company

("GenStar"), as excess insurer.  Mutual Marine moves for summary judgment,

seeking from GenStar the amount of money Mutual Marine paid above Mutual

Marine's policy limit in connection with a personal injury state court action.

## II.    BACKGROUND[1]

### A.    The Contract and the Insurance Policies

The underlying personal injury action arose out of an accident at New

York City Passenger Ship Terminal (the "Terminal"), which is owned by the City

of New York (the "City").  International Terminal Operating Co., Inc. ("ITO") was

the stevedore of the Terminal during the relevant time period.[2]  On February 4,

1999, ITO entered into a contract with Universal Fabricators, Inc. ("UFI")

pursuant to which UFI would perform repair work at the Terminal (the

"Contract").[3]

A rider to the Contract entered into between ITO and UFI provided

that UFI would "indemnify, defend and hold harmless [ITO and the City] from and

---

[1]      The facts set forth below are taken from GenStar's Statement
Pursuant to Local Rule 56.1 ("GS 56.1"), Responses of GenStar to New York
Marine and General Insurance Company and Mutual Marine Office, Inc.'s
Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("MMO
56.1"), and any affidavits, declarations, and exhibits attached thereto.  Where the
facts are in dispute, all reasonable inferences have been drawn in favor of the non-
moving party, GenStar.

[2]      *See* MMO 56.1 ¶ 2.

[3]      *See id.* ¶¶ 3-4.

against all claims, demands, liabilities, damages, costs, losses and expenses . . . ."[4]
The Rider also required UFI to obtain a Comprehensive General Liability
Insurance Policy in the amount of five million dollars per occurrence.[5]  The Rider
provided that such insurance coverage would name ITO and the City as additional
insureds.[6]  The Rider specified that such additional insurance coverage under
UFI's policy "shall be considered primary and not contributory as respects other
insurance."[7]

UFI obtained general liability insurance coverage through Mutual
Marine as primary insurer, with a policy limit of one million dollars.[8]  UFI also
obtained excess (umbrella) coverage through GenStar, with a policy limit of five
million dollars.[9]  In accordance with the Rider, ITO and the City were named as
additional insureds pursuant to Endorsement Fourteen of the Mutual Marine

---

[4]     Rider to the Contract between UFI and ITO/the City ("Rider"), Ex. B
to Declaration of William D. Gallagher, Counsel for GenStar, in Support of
Motion for Summary Judgment ("Gallagher Decl.").

[5]     *See* Rider.

[6]     *See id.*

[7]     *Id.*

[8]     *See* GenStar's Memorandum in Opposition to Mutual Marine's
Motion for Summary Judgment ("Opp. Mem.") at 4.

[9]     *See id.*

policy.[10] That endorsement provided, however, that the City's status as an

additional insured is nullified if "Bodily Injury or Property Damage aris[es] out of

any act or omission of the Additional Insured or any of his employees . . . ."[11]

Again pursuant to the Rider, UFI obtained Employer's Liability 1B coverage

through American Alternative Insurance Corporation ("American Alternative"),

with a policy limit of one hundred thousand dollars.[12]

## B.    Underlying Personal Injury Action

On February 26, 1999, Ronald Ernish, an employee of UFI, was

injured as a result of an accident at the Terminal while he was performing repair

---

[10]    *See* 2/16/99 Endorsement Fourteen of Insurance Policy of Mutual
Marine to UFI ("Endorsement"), Ex. M to Gallagher Decl.  The Rider also
required a certificate of insurance to be issued certifying ITO and the City's
additional insured status.  That certificate was issued on February 16, 1999, and
both named Mutual Marine and Genstar as "Companies Affording Coverage."  *See*
02/16/99 UFI Certificate of Insurance ("Certificate"), Ex. D to Gallagher Decl.

[11]    *See* Endorsement.

[12]    *See* Rider. *See also* 4/15/99 Employer's Liability 1B Policy from
American Alternative to UFI ("1B Policy"), Ex. B to 04/27/07 Declaration of
Natasha C. van der Greindt, counsel for GenStar, in Opposition to New York
Marine and General Insurance Company and Mutual Marine Office, Inc.'s Motion
for Summary Judgment and in Support of Relief Requested ("van der Griendt
Decl.").  Employer's Liability 1B coverage is an additional insurance policy that
provides coverage for accidents resulting in bodily injury or disease which fall
outside the scope of Workmans' Compensation coverage. *See* 1B Policy.

-4-

work.[13] Ernish, along with his wife, brought a personal injury action in New York

State court to recover damages (the "Underlying Action").[14] The Underlying

Action named as defendants the City and ITO.[15] In turn, ITO and the City filed a

third-party complaint against UFI seeking, *inter alia*, indemnification.[16] Ernish's

claims have been resolved, and he received full satisfaction of the judgment

entered in his favor against the defendants.[17] The facts underlying the third-party

complaint and the dispute between the parties and their respective insurers giving

rise to the present dispute are set forth below.

      The City and ITO's insurers, National Union Fire Insurance Company

---

[13]     *See* MMO 56.1 ¶ 8. He "sustained serious head injuries, as well as injuries to both shoulders and his right arm" when he fell from a ladder or scaffold that collapsed under his weight. *Ernish v. City of New York*, 2 A.D.2d 256, 258 (1st Dep't 2003).

[14]     *See* MMO 56.1 ¶ 1. The Underlying Action was entitled *Ronald & Maryev Ernish v. International Terminal Operating Corp. & The City of New York* (Index No. 119828/99). *See id.*

[15]     *See id.* ¶ 2. UFI was not named as a defendant due to the Workman's Compensation Laws that prohibit direct lawsuits for injuries sustained during the course of employment. *See* 4/15/99 Workmans' Compensation Coverage to UFI ("Workmans' Comp."), Ex. B to van der Griendt Decl.

[16]     *See* GS 56.1 ¶ 11. Specifically, the third-party complaint alleged common law indemnity, contractual indemnity, contractual contribution and failure to procure insurance. *See id*.

[17]     *See* MMO 56.1 ¶ 25.

-5-

of Louisiana, Marine Office of America Corporation (Boston Old Colony

Insurance Company) and Navigators Insurance Services of Texas, Inc.

(collectively, "National Union"), assumed the defense of the City and ITO in the

Underlying Action.[18]  Similarly, Mutual Marine, as primary insurer of UFI,

assumed the defense of UFI in the third-party action.[19]

        Mutual Marine timely notified GenStar of the existence of the third-

party action against their insured, UFI.[20]  On May 25, 2000, Steven Leone, Vice

President of claims at GenStar, wrote to Mutual Marine's loss secretary, Paul

Smith, advising Mutual Marine of GenStar's position with respect to the

Underlying Action.[21]  GenStar's letter stated that "[b]ased upon the information

you have provided, we do not believe there is an exposure that would involve our

policy.  As such, we are closing our file.  Should future developments lead you to

believe otherwise, please notify us immediately."[22]  Nonetheless, on or about June

_____

[18]    *See id.* ¶ 10.  ITO agreed to assume the defense and indemnify the
City under its own line of insurance. *See* Opp. Mem. at 3.

[19]    *See* MMO 56.1 ¶ 11.

[20]    *See id.* ¶ 12.

[21]    *See* 5/25/00 Letter from Steven Leone to Mutual Marine ("May 25
Letter"), Ex. E to Gallagher Decl.

[22]    *Id.*

-6-

1, 2000, a UFI employee sent GenStar a document pertaining to the Underlying

Action.[23]   On June 1, 2000, Leone sent another letter to Smith, stating:

> As you may recall, we represent the umbrella interests of our
> mutual insured, Universal Fabricators, Inc. Along these lines we
> have previously closed our file and advised you of same.
> Attached, please find documentation received from our
> wholesaler regarding International Terminal Operating Company
> and the City of New York's tender. As primary carrier, please
> handle this as you see fit.
> As previously requested, please advise us immediately if the
> circumstances, as we know them, lead you to believe that this
> matter's exposure will exceed the limits of your policy.[24]

On September 17, 2001, counsel for Mutual Marine, on behalf of

UFI, and counsel for National Union, on behalf of ITO and the City, entered into

a "Settlement and Cooperation Agreement" pursuant to which the parties agreed to

apportion among themselves any eventual settlement or judgment awarded to

Ernish in the Underlying Action.[25]   GenStar was not involved in the negotiations

of this Agreement, was not notified of this Agreement, and was not a signatory to

the Agreement.[26]   The First Agreement provided for apportionment as follows:

---

[23]     *See* GS 56.1 ¶ 13.

[24]     6/01/00 Letter from Steven Leone to Mutual Marine, Ex. F to
Gallagher Decl.

[25]     *See* 09/17/01 First Settlement and Cooperation Agreement ("First
Agreement"), Ex. G to Gallagher Decl. *See also* GS 56.1 ¶ 16.

[26]     *See* MMO 56.1 ¶ 17.

ITO and the City, collectively, would contribute twenty-five percent of any judgment, and UFI would contribute seventy-five percent.[27]   The Agreement did not contain any limit on UFI's liability in the event of a blowout jury verdict.[28] The First Agreement purported to "bind UFI, ITO, City, and their *respective insurers*, subsidiaries, affiliates, heirs, executors, assigns and successors in interest . . . ."[29]

On January 1, 2002, the court directed a verdict in favor of Ernish in the Underlying Action, and the jury awarded Ernish three million dollars.[30]   On January 22, 2002, GenStar finally received its first notice of the First Agreement.[31]

Subsequently, on December 16, 2003, the New York appellate court reduced the jury's verdict to $2,175,000.00.[32]   The parties (Ernish, ITO and the City) then resolved the case for $2,463,082.12, including interest.[33]   By the time

----

[27]   *See* First Agreement at 1.

[28]   *See id.* at 1-3.

[29]   *Id.* at 2 (emphasis added).

[30]   *See* MMO 56.1 ¶ 18.

[31]   *See* GS 56.1 ¶ 12.

[32]   *See* MMO 56.1 ¶¶ 19-20.

[33]   *See id.* ¶ 21.

-8-

the final judgment had been entered, the total sum due to plaintiff amounted to

$2,569,673.15.[34]

       As agreed under the First Agreement, National Union, on behalf of

ITO and the City,[35] contributed the twenty-five percent apportionment of the

verdict (roughly $650,000.00).[36]  Of the remaining seventy-five percent owed by

UFI (roughly $1.7 million), Mutual Marine paid up to its policy limit of one

million dollars plus interest, for a total of $1,196,727.00.[37]  Mutual Marine then

turned to GenStar, the excess carrier, to pay the remainder of the seventy-five

percent apportionment under the First Agreement (roughly $650,000.00).[38]

GenStar refused to pay, declaring it was under no obligation to contribute based

---

[34]    *See id.* ¶ 24.  Payment of the Underlying Action was based upon the previous figure of $2,463,082.12.  *See* GS 56.1 ¶¶ 21, 28.

[35]    ITO carried the following insurance:  National Union Fire Insurance Company of Louisiana with primary coverage of one million dollars; Marine Office of America Corporation (Boston Old Colony Insurance Company) with coverage of sixty percent of fifty million excess; and Navigators Insurance Services of Texas, Inc., with forty percent of fifty million excess.  *See* GS 56.1 ¶ 10.

[36]    *See id.* ¶ 21.  The precise amounts that were due at any given time are in dispute, but the exact amounts are not relevant to the issues herein.

[37]    *See id.* ¶ 26.

[38]    *See* MMO 56.1 ¶¶ 25-27.

-9-

on the terms of the First Agreement.[39]  National Union, on behalf of ITO and the

City, then paid Ernish $650,584.19 over and above the agreed twenty-five percent

apportionment in order to satisfy the judgment against ITO and the City.[40]

National Union then demanded UFI and GenStar provide reimbursement.[41]

        National Union then commenced the present action, seeking a

declaratory judgment against UFI, Mutual Marine and GenStar to recoup the

payments it made in excess of its apportionment under the First Agreement.[42]  In

May 2005, Mutual Marine and UFI entered into a "Settlement and Cooperation

Agreement" (the "Second Agreement"), pursuant to which Mutual Marine agreed

to indemnify and defend UFI in National Union's declaratory judgment action.[43]

---

[39]    *See id.* ¶ 25.

[40]    *See* GS 56.1 ¶¶ 21, 28.  The *Ernish* settlement, accrued with interest
to a total of $2,463,082.12, was paid as follows — Mutual Marine:
$1,196,727.00, National Union: $831,821.87, MOAC: $260,719.71, Navigators
Insurance Services of Texas, Inc.: $173,813.14.  *See id.*

[41]    *See id.* ¶ 27 (citing 2/25/04 Correspondence from National Union to
UFI and GenStar, Ex. H to Gallagher Decl.; 3/25/04 Correspondence from ITO's
insurers to UFI and GenStar, Ex. I to Gallagher Decl.).

[42]    *See* MMO 56.1 ¶ 28.

[43]    *See* May, 2005 Second Settlement and Cooperation Agreement
("Second Agreement"), Ex. L to van der Greindt Decl.  The Second Agreement
also reads that "to the extent NYMAGIC INC. pays any judgment or verdict
against UFI in the litigation, or pays any settlement of any claim against UFI in the
litigation or for any further liability under the September 17th Agreement,

-10-

As was the case with the First Agreement, the Second Agreement was entered into without the participation or knowledge of GenStar.[44]  Indeed, GenStar did not learn of the existence of the Second Agreement until April 4, 2006, almost a year later.[45]

On April 6, 2006, Mutual Marine and National Union entered into a "Settlement and Cooperation Agreement" (the "Third Agreement").[46]  Under this agreement, Mutual Marine agreed to pay National Union seven hundred thousand dollars to reimburse National Union for the money it had overpaid to satisfy the Underlying Action.[47]  In effect, the Third Agreement disposed of National Union's declaratory judgment action.[48]  In exchange for Mutual Marine's payment to National Union, National Union assigned its rights and interests to Mutual Marine

---

NYMAGIC INC. shall be subrogated to any and all rights of UFI, and/or be assigned such rights by UFI . . . .").  *Id.*

[44]     *See* GS 56.1 ¶ 29.

[45]     *See* Opp. Mem. at 7.

[46]     *See* 4/06/06 Third Settlement and Cooperation Agreement ("Third Agreement"), Ex. S to Gallagher Decl.

[47]     *See id.*

[48]     *See* Opp. Mem. at 7.

-11-

to recoup the excess payment.[49]  Mutual Marine paid the amount due under the

Third Agreement and is now seeking $732,000 from GenStar as reimbursement.[50]

###### C.    Additional Facts Adduced in Discovery

Paul Smith testified that at or about the time that the First Agreement

was entered into, Mutual Marine believed that by agreeing to settle the third-party

action, Mutual Marine could avoid having to disclose that ITO and the City were

entitled to additional insured status under the Mutual Marine policy.[51]  Smith also

testified that Mutual Marine was "fearful" that ITO and the City would realize that

they may have been entitled to the additional insurance policy.[52]  Finally, Smith

testified that Mutual Marine instructed its defense counsel to stall in producing

documentation that would have alerted ITO and the City to their additional insured

status.[53]

In his deposition testimony, Steven Leone expressed GenStar's state

of mind upon learning of the First Agreement,

---

[49]     *See* Third Agreement.

[50]     *See* GS 56.1 ¶¶ 28-30.

[51]     *See* 11/01/06 Deposition of Paul Smith of Mutual Marine ("Smith Dep.") at 135:11-137:10, Ex. G to van der Griendt Decl.

[52]     *See id.*

[53]     *See id.*

-12-

[b]ased upon my experience of handling similar type 240 cases, I know through experience that it's quite easy to defeat the contractual claim if it could be found that the [general contractor] or owner are one percent liable. And that would in effect extinguish the contractual [indemnification] claim. The one 1-B carrier would be exposed and the [general liability] carrier may indeed walk away from the case. So, therefore by this so-called agreement, which we were not privy to or able to take or give input to, we were very, very concerned.[54]

## D.    Procedural History

National Union originally commenced the instant declaratory

judgment action in Supreme Court, New York County.[55] On April 1, 2005,

GenStar removed this action to this court.[56] On June 3, 2005, National Union

amended its complaint to add a number of other defendants.[57] On June 29, 2005,

GenStar answered the Amended Complaint and asserted cross-claims against

various defendants.[58]

On January 27, 2006, National Union filed a Second Amended

---

[54]    2/08/07 Deposition of Steven Leone of GenStar, at 63:25-64:15, Ex. Q to Gallagher Decl.

[55]    See Opp. Mem. at 2. The declaratory judgment action was entitled *National Union Fire Insurance Company of Louisiana et al. v. Universal Fabricators, Inc. and General Star*, Index No.: 600623/05.

[56]    See id.

[57]    See id.

[58]    See id.

-13-

Complaint.[59]  On June 23, 2006, Mutual Marine served its Answer to the Second

Amended Complaint and asserted cross-claims against GenStar.[60]  On July 14,

2006, GenStar filed an Amended Answer and Affirmative Defenses to the Second

Amended Complaint and Cross-Claims of Mutual Marine.[61]  In the Amended

Answer, GenStar also asserted its own cross-claims against Mutual Marine.[62]  On

March 28, 2007, Mutual Marine moved for summary judgment against GenStar.

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."[63]  An issue of fact is genuine "'if

the evidence is such that a reasonable jury could return a verdict for the

---

[59]    *See* 1/27/06 Second Amended Complaint of National Union ("SAC"), Ex. A to van der Greindt Decl.

[60]    *See* 6/23/06 Answer of Mutual Marine to SAC, Ex. O to Gallagher Decl.

[61]    *See* 7/14/06 Amended Answer and Affirmative Defenses to the Amended Answer to SAC and Cross-Claims of NYMAGIC and MMO, Ex. P to Gallagher Decl.

[62]    *See id.*

[63]    Fed. R. Civ. P. 56(c).

-14-

nonmoving party.'"[64] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[65] "It is the movant's burden to show that no genuine factual dispute exists."[66]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than show that there is "'some metaphysical doubt as to the material facts,'"[67] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[68] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[69]

---

[64]     *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).

[65]     *Bouboulis v. Transport Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[66]     *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[67]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[68]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[69]     *McClellan*, 439 F.3d at 144 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

-15-

In determining whether a genuine issue of material fact exists, the

court must construe the evidence in the light most favorable to the non-moving

party and draw all justifiable inferences in that party's favor.[70]  However, "[i]t is a

settled rule that '[c]redibility assessments, choices between conflicting versions of

the events, and the weighing of evidence are matters for the jury, not for the court

on a motion for summary judgment.'"[71]  Summary judgment is therefore

inappropriate "if there is any evidence in the record that could reasonably support

a jury's verdict for the non-moving party."[72]

## IV.   APPLICABLE LAW

### A.   Settlement Agreements

Section 2104 of the New York Civil Practice Laws and Rules

provides ("CPLR 2104"),

> [a]n agreement between parties or their attorneys relating to any
> matter in an action, other than one made between counsel in open
> court, is not binding upon a party unless it is in a writing

---

[70]   *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d
450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305,
312 (2d Cir. 1997)).

[71]   *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50,
55 (2d Cir. 1997)).   *Accord Anderson,* 477 U.S. at 249.

[72]   *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)
(citing *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000)).

-16-

subscribed by him or his attorney or reduced to the form of an order and entered. With respect to stipulations of settlement and notwithstanding the form of the stipulation of settlement, the terms of such stipulation shall be filed by the defendant with the county clerk.

Settlement agreements do not fall within the exception of a

stipulation made between counsel in open court.[73] The term "subscribed" as used

in CPLR 2104 is interpreted to mean "signed."[74] CPLR 2104 applies to settlement

agreements between insurers.[75]

## B.    Insurance Law

### 1.    Waiver

"Waiver is a voluntary and intentional relinquishment of a known

right with full knowledge of the facts upon which the existence of the right

---

[73]    *See Dolgin v. Dolgin*, 31 N.Y.2d 1, 10 (1972) ("[T]o extend the exception of CPLR 2104 beyond its meaning to cover purported agreements reached elsewhere is to extend a limited exception derived from necessity (yet with significant safeguards) to an uncontrollable area.").

[74]    *See Brooklyn Heights Med. v. State-Wide Ins. Co.*, 800 N.Y.S.2d 343, 343 (Civ. Ct. Kings Co. May 17, 2005).

[75]    *See, e.g.*, *Dolgin*, 31 N.Y.2d at 8.

-17-

depends."[76]  Waiver "should not be lightly presumed."[77]  "An insurer can be said

to have waived certain defenses where there is proof that the insurer intended to

abandon that defense, or where such an intention can clearly be inferred from the

circumstances."[78]  "The doctrine of waiver evolved to prevent forfeitures of the

insured's coverage which would otherwise result when an insured breaches a

policy condition."[79]

### 2.   Disclaimer Under Section 3420(d) of New York's Insurance Law

Section 3420(d) of New York's Insurance Law states:

> If under *a liability policy* delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within the state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.[80]

---

[76]   1 Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 2.06[a], at 90 (13th ed. 2006) (citing *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002)).

[77]   *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966, 968 (1988).

[78]   *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, No. 92 Civ. 5249, 1997 WL 96551, at *7 (S.D.N.Y. Mar. 5), *aff'd*, 129 F.3d 113 (2d Cir. 1997).

[79]   1 Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 2.06[a], at 90.

[80]   N.Y. Insurance Law § 3420(d) (McKinney 2006) (emphasis added).

-18-

Section 3420's disclaimer requirement by its plain terms applies only to the extent

that an insurer is denying coverage based upon a policy exclusion or breach of the

insurance policy.[81]

## V. DISCUSSION

### A. GenStar Is Not Bound to Pay Under the Terms of the First Agreement

It is undisputed that GenStar was not a signatory to the First

Agreement. As a result, CPLR 2104 dictates that GenStar cannot be bound to its

terms. To avoid this result, Mutual Marine places heavy reliance on a twenty year

old New York Supreme Court trial court decision, *Gladstone v. D.W. Ritter Co.*,

which Mutual Marine asserts creates an exception to the general rule of CPLR

2104 that a non-signatory is not bound to an agreement. Mutual Marine's reliance

is misplaced. In *Gladstone*, the excess insurer, Hartford, was repeatedly asked by

its insured to actively participate in the defense and settlement of the underlying

---

[81]     *See Continental Cas. Co. v. Luhrs*, 299 A.D.2d 357, 358 (2d Dep't
2002) (holding timely disclaimer of coverage was not required "because the
noncoverage arose from a lack of inclusion"); *City of New York v. Westchester
Fire Ins. Co.*, 6 Misc. 1027(A), No. 04 Civ. 11560, 2004 WL 3203912, at *2 (Sup.
Ct. Kings Co. Dec. 14, 2004) ("'[D]isclaimer pursuant to section 3420(d) is
necessary when denial of coverage is based on a policy exclusion without which
the claim would be covered.'" (quoting *Worcester Ins. Co. v. Bettenhauser*, 95
N.Y.2d 195, 188-89 (2000))).

-19-

wrongful death action, but Hartford repeatedly refused to participate.[82]  Moreover,

Hartford had prior notice of the settlement agreements.[83]  GenStar, by contrast,

never refused to participate in the defense or settlement, but rather specifically

requested to be notified in the event that Mutual Marine felt that the excess

coverage might be reached so that GenStar could decide whether to participate at

that time.  Furthermore, GenStar was not given any opportunity to take part in the

settlement negotiations.[84]  More tellingly, GenStar was not advised of the First

Agreement until after a verdict was reached on the Underlying Action.[85]  Under

the circumstances, and pursuant to CPLR 2104, GenStar is not bound to pay

pursuant to the terms of the First Agreement unless GenStar's conduct indicates a

waiver of its right to assert the defense of CPLR 2104 or that GenStar had a duty

to disclaim coverage.  As discussed below, neither waiver nor a duty to disclaim

---

[82]     *Gladstone v. D.W. Ritter Co.*, 508 N.Y.S.2d 880, 882 (Sup. Ct. Columbia Co. 1986) (stating that the "the general rule is that a stipulation is not binding upon a person who is not a party to the agreement" (citing *Doyle v. Happy Tumbler Wash-O-Mat, Inc.*, 113 A.D.2d 818, 820 (2d Dep't 1985))).

[83]     *See id.*

[84]     *See AIU Ins. Co. v. Valley Forge Ins. Co.*, 303 A.D.2d 325, 325 (1st Dep't 2003) ("Inasmuch as Valley Forge Insurance Company . . . did not take part in the settlement negotiations or agree to the . . . settlement of the underlying personal injury action, Valley Forge is not required to contribute to that settlement.").

[85]     *See* GS 56.1 ¶ 12.

-20-

arose in this case.

### 1.    GenStar Has Not Waived Its Defense Under CPLR 2104

Mutual Marine argues that GenStar waived its defense under CPLR

2104 by virtue of the two letters from Leone of GenStar to Mutual Marine, which

Mutual Marine argues demonstrates GenStar's decision to stay "out of the loop."[86]

The plain language of these letters, however, indicate otherwise. In his first letter

Leone wrote "[s]hould future developments lead you to believe otherwise [*i.e.* that

GenStar as excess insurer might have exposure in the Underlying Action], please

notify us immediately." Again, in his second letter Leone wrote "[a]s previously

requested, please advise us immediately if the circumstances, as we know them,

lead you to believe that this matter's exposure will exceed the limits of your

policy." As a result, it cannot be said that GenStar voluntarily relinquished a

known right. Nothing in the record supports the conclusion that GenStar, by these

letters, agreed to be bound by an agreement affecting its rights of which it was

never notified until after the verdict and which it did not sign. To the contrary, it

specifically reserved its rights. No material fact dispute exists here that could

support a finding of waiver.

---

[86]    Mutual Marine Memorandum of Law in Support of Motion for
Summary Judgment at 10.

## 2. GenStar Had No Duty to Disclaim

Mutual Marine also argues that GenStar is precluded from relying on

CPLR 2104 because it did not properly disclaim liability under N.Y. Insurance

Law section 3420(d).[87] Mutual Marine's citation to section 3420(d) is misplaced.

As stated above, section 3420(d) would apply if GenStar sought to deny coverage

based on a policy exclusion or a breach of the terms of its policy. Here, however,

GenStar is not claiming that UFI (its insured) breached the terms of the GenStar

excess policy, such as by making a payment or assuming an obligation without its

consent,[88] nor is GenStar claiming that any exclusion in its policy relieves GenStar

of its duty to provide coverage to UFI. Rather, GenStar is claiming that it is not

bound under New York law to the terms of the First Agreement, of which it had no

knowledge and did not sign. Section 3420(d) does not apply as a matter of law,

and thus no disclaimer was required.

---

[87]   N.Y. Insurance Law § 3420(d).

[88]   *See* 2/28/07 Pre-Trial Conference Tr. at 19-20 (GenStar rescinds and
waives the argument that Universal breached GenStar policy condition 5.d.).
GenStar policy no.: 332963C Condition ¶ 5.d. states "[n]o insureds will, except at
their own expense, voluntarily make any payment, assume any obligation, or incur
any expense without our consent." 5/29/98 Excess Umbrella Policy Issued to
Universal by GenStar, Ex. N to Gallagher Decl.

-22-

**B.     GenStar's Obligation to Pay Under the Terms of Its Policy Is Not Addressed in This Opinion**

The present motion for summary judgment was made on the limited issue of whether GenStar was bound under the terms of the First Agreement, as set forth at the Court's hearing on February 28, 2007.[89]  As a result, this Opinion does not address the remaining issue of whether GenStar is bound to pay under the terms of its excess insurance policy.  GenStar may move for summary judgment on this issue.

**VI.    CONCLUSION**

For the foregoing reasons, Mutual Marine's motion for summary judgment is denied.  The Clerk of the Court is directed to close this motion (docket # 39).  In a letter endorsement dated June 13, 2007, the Court had denied GenStar's motion for leave to file a sur-reply.  Accordingly, the Clerk of the Court is directed to close that motion (docket # 46).  GenStar may move for summary judgment on the issue of whether GenStar must pay under the terms of its excess policy.  The briefing schedule for that motion is as follows:  GenStar shall submit

---

[89]     *See* February 28, 2007 Hearing Tr. at 21-22 ("[A]ll it boils down to [is] are you [GenStar] bound by the 75-25 split . . . . Brief only that.").

its moving papers on or before August 1, 2007; Mutual Marine shall submit its

opposition on or before August 15, 2007; GenStar shall submit its reply on or

before August 22, 2007.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 18, 2007

-24-

### -Appearances-

**For Defendants Universal Fabricators, Inc., New York Marine and General Insurance Company and Mutual Marine Office, Inc.:**

Patrick W. Brophy, Esq.
McMahon, Martine & Gallagher, LLP
90 Broad Street, 14th Floor
New York, New York 10004
Tel. (212) 747-1230

**For Defendant General Star National Insurance Company:**

Christopher T. Bradley, Esq.
Michael Scott Gollub, Esq.
Marshall, Conway, Wright & Bradley, P.C.
116 John Street
New York, New York 10038
Tel. (212) 619-4444

**For Defendant American Alternative Insurance Group:**

Henry G. Morgan, Esq.
Joseph DeDonato, Esq.
Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski
39 Broadway, 35th Floor
New York, New York 10006
Tel. (212) 735-8600

**For Plaintiffs National Union Fire Insurance Company of Louisiana, AI Marine Adjusters, Inc., Navigators Insurance Services of Texas, Inc. and Marine Office of America Corporation:**

John T. Lillis, Jr., Esq.
Kennedy Lillis Schmidt & English
75 Maiden Lane, Suite 420
New York, New York 10038
Tel. (212) 430-0800