**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

| | |
|---|---|
| **NATIONAL UNION FIRE INSURANCE** : | |
| **COMPANY OF LOUISIANA, AI MARINE** : | |
| **ADJUSTERS, INC., NAVIGATORS** : | |
| **INSURANCE SERVICES OF TEXAS, INC.** : | |
| **and MARINE OFFICE OF AMERICA** : | |
| **CORPORATION,** : | |

               **Plaintiffs,**    :

                     :   **OPINION AND ORDER**

       **- against -**       :

                     :   **05 Civ. 3418 (SAS)**

**UNIVERSAL FABRICATORS, INC.,**  :
**GENERAL STAR NATIONAL INSURANCE**  :
**COMPANY, NEW YORK MARINE AND**  :
**GENERAL INSURANCE COMPANY,**  :
**MUTUAL MARINE OFFICE, INC. and**  :
**AMERICAN ALTERNATIVE INSURANCE**  :
**GROUP,**  :

               **Defendants.**    :
----------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/19/10

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

The present dispute involves New York Marine and General Insurance

Company and Mutual Marine Office, Inc. (collectively, "Mutual Marine"), as

primary insurer, and General Star National Insurance Company ("GenStar"), as

excess insurer.  On September 14, 2007, I granted summary judgment in favor of

Mutual Marine.  The Second Circuit vacated that judgment and remanded for

further proceedings.[1] On remand, Mutual Marine has again moved for summary judgment.

## II.   BACKGROUND

The factual background of this case has been extensively detailed in this Court's July 18, 2007[2] and September 14, 2007[3] opinions. Familiarity with these opinions is assumed. However, I will briefly summarize the relevant facts.

This action arises out of a state court action instituted by Ronald and Maryev Ernish against the City of New York ("City") and International Terminal Operating Co, Inc. ("ITO") (the "*Ernish* Action").[4] ITO was the stevedore for a New York City passenger ship terminal.[5] It entered into a contract with United Fabricators, Inc. ("UFI") to perform repair work at that terminal.[6] As a rider to the contract, UFI was required to obtain a comprehensive general liability insurance

---

[1]   *See National Union Fire Ins. Co. of Louisiana v. Universal Fabricators, Inc.*, 585 F.3d 662, 666 (2d Cir. 2009).

[2]   *National Union Fire Ins. Co. of Louisiana v. Universal Fabricators, Inc.*, No. 05 Civ. 3418, 2007 WL 2059840 (S.D.N.Y. July 18, 2007).

[3]   *National Union Fire Ins. Co. of Louisiana v. Universal Fabricators, Inc.*, No. 05 Civ. 3418, 2007 WL 2701990 (S.D.N.Y. Sept. 14, 2007).

[4]   *See* Mutual Marine's Rule 56.1 Statement ("Mutual Marine 56.1") ¶ 1.

[5]   *See id.* ¶ 2.

[6]   *See id.* ¶ 3.

-2-

policy in the amount of five million dollars per occurrence and to indemnify,

defend and hold ITO and the City harmless from and against any and all injury

claims arising out of the negligence of UFI in the performance of the contract.[7]  As

required, UFI obtained one million dollars in primary liability insurance from

Mutual Marine and four million dollars in secondary excess liability insurance

from GenStar.[8]

        The policy issued by GenStar to UFI (the "GenStar Policy")[9] provides

that GenStar "will pay on behalf of the insured for ultimate net loss in excess of the

retained limit because of bodily injury or property damage to which this policy

applies."[10]  "Ultimate net loss" is defined as "the total amount of damages for

which the insured is legally liable."[11]  The definition goes on to provide, in

pertinent part, that "[u]ltimate net loss may be established by adjudication,

arbitration or a compromise settlement to which we have previously agreed in

---

        [7]     *See id.* ¶ 4.

        [8]     *See id.* ¶¶ 5-6.

        [9]     General Star National Insurance Company Umbrella Policy No. NUG-332963C ("GenStar Policy"), Ex. N to the Declaration of Patrick W. Brophy ("Brophy Decl.").

        [10]    GenStar Policy § I, ¶ 1 (emphasis omitted).

        [11]    *Id.* § VI, ¶ 23.

-3-

writing."[12]

After Ronald and Maryev Ernish filed their state court action, the City and ITO filed a third-party complaint against UFI seeking indemnification in the *Ernish* Action. However, prior to trial, an agreement (the "First Agreement") was entered into which provided that ITO and the City would discontinue their third-party claim against UFI, that ITO and the City would pay twenty-five percent of whatever amount was ultimately awarded in the *Ernish* Action, and that UFI would pay seventy-five percent of that amount.[13] The agreement was executed by Todd Kenyon, counsel for UFI, and Thomas Murphy, counsel for ITO and the City.[14]

A jury subsequently awarded Ronald and Maryev Ernish a total of

---

[12]   *Id.*

[13]   *See* 9/17/01 Settlement and Cooperation Agreement ("First Agreement"), Ex. G to Brophy Decl., at 1-2.

[14]   *See id.* at 3. The Second Circuit was apparently under the impression that Mutual Marine's counsel, and not UFI's counsel, had entered into the First Agreement. *See National Union*, 585 F.3d at 666 (2d Cir. 2009) ("Before trial began in the *Ernish* lawsuit against ITO and the City, *Mutual Marine's attorneys* executed [the First Agreement] with both ITO and the City, purportedly on behalf of UFI . . . ." (emphasis added)). However, the parties have made clear in their briefing that the First Agreement was executed by UFI's attorney. *Compare* Mutual Marine's Memorandum of Law in Support of Motion for Summary Judgment at 4 *with* GenStar's Opposition to Mutual Marine's Second Motion for Summary Judgment ("GenStar Opp.") at 1.

-4-

three million dollars,[15] but that amount was later reduced by the state court to
$2,175,000.[16] ITO and the City's insurers – National Unition Fire Insurance
Company of Louisiana, A1 Marine Adjusters, Inc., the Marine Office of America
Corp., and Navigators Insurance Services of Texas, Inc. (collectively, "National
Union") – paid twenty-five percent of the judgment to satisfy the obligation of the
City and ITO under the First Agreement.[17] Mutual Marine paid one million dollars
plus interest to satisfy its share of the seventy-five percent of the judgment owed
by UFI under the First Agreement.[18] When GenStar refused to pay the remainder
of the judgment, National Union paid the remainder and commenced an action for
declaratory judgment against UFI, Mutual Marine, and GenStar.[19]

Thereafter, Mutual Marine, UFI, and National Union entered into two
additional settlement agreements. Mutual Marine and UFI entered into an
agreement (the "Second Agreement") under which Mutual Marine agreed to
indemnify and defend UFI in the declaratory judgment action and in return UFI
assigned Mutual Marine the rights "to pursue claims against GenStar for amounts

---

[15]    *See* Mutual Marine 56.1 ¶ 17.

[16]    *See id.* ¶ 19.

[17]    *See National Union*, 585 F.3d at 666.

[18]    *See id.*

[19]    *See id.* at 667.

paid and for attorneys fees and costs . . . ."[20]  Mutual Marine and National Union also entered into an agreement (the "Third Agreement") under which Mutual Marine agreed to pay National Union seven hundred thousand dollars and in return National Union agreed to dismiss its suit against UFI and Mutual Marine and to assign the rights it had asserted against GenStar in that lawsuit to Mutual Marine.[21] Accordingly, pursuant to the Second and Third Agreements, UFI has been indemnified and National Union has been paid in full.  Mutual Marine maintains its suit against GenStar for the excess over its one million dollar policy limit that it paid to National Union to cover the share of the *Ernish* judgment UFI allegedly owes under the terms of the First Agreement.

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22]  "'An issue of fact is genuine if the evidence is such that a reasonable jury

---

[20]     5/10/05 Settlement and Cooperation Agreement ("Second Agreement"), Ex. A to Reply Declaration of Patrick Brophy.

[21]     *See* 4/6/06 Settlement Agreement ("Third Agreement"), Ex. S to Brophey Decl.

[22]     Fed. R. Civ. P. 56(c).

could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[23] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[24]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[25] To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[26] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[27] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to

[23]    *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[24]    *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

[25]    *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[26]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[27]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

-7-

resolve the parties' differing versions of the truth at trial.'"[28]

        In determining whether a genuine issue of material fact exists, the

court must "constru[e] the evidence in the light most favorable to the non-moving

party and draw all reasonable inferences" in that party's favor.[29]  However, "'only

admissible evidence need be considered by the trial court in ruling on a motion for

summary judgment.'"[30]  "'Credibility assessments, choices between conflicting

versions of the events, and the weighing of evidence are matters for the jury, not

for the court on a motion for summary judgment.'"[31]  Summary judgment is

therefore "appropriate only if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law."[32]

## IV.    DISCUSSION

### A.    Second Circuit Opinion

---

[28]    *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206
(2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49
(1986)).

[29]    *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*,
477 U.S. at 247-50, 255).

[30]    *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d
244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir.
1997)).

[31]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl
v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[32]    *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

-8-

On appeal, the Second Circuit began by analyzing key provisions of

the GenStar Policy.  GenStar's obligation under the policy is triggered when UFI

incurs an "[u]ltimate net loss."  According to the terms of the policy:

> Ultimate net loss means the total amount of damages for which
> the Insured is legally liable.  Ultimate net loss my be established
> by adjudication, arbitration or a compromise settlement to which
> we have previously agreed in writing.[33]

The circuit court determined that this provision required a two-part analysis.

*First*, GenStar's obligation under the policy is triggered when the insured, in this

case UFI, is determined to be "legally liable for any amount."[34]  There is no

express limitation (*e.g.*, by adjudication) as to how that legal liability can be

established.[35]  *Second*, if UFI is determined to be legally liable, then the amount of

that loss must be "established in a manner consonant with the terms of the GenStar

policy"[36] – *e.g.*, by "'adjudication, arbitration or compromised settlement . . . .'"[37]

As to the first part of the analysis, in granting summary judgment for

Mutual Marine, I determined that the *Ernish* lawsuit was an "'adjudication of

---

[33]    GenStar Policy ¶ 23.

[34]    *National Union Fire*, 585 F.3d at 670.

[35]    *See id.*

[36]    *Id.*

[37]    *Id.* (quoting GenStar Policy ¶ 23).

liability as to both ITO and the City" and "ultimately" as to "UFI if and when called upon to indemnify ITO and the City."[38]  The Second Circuit disagreed.  It determined that while the *Ernish* Action was an adjudication of liability as to ITO and the City, it "was not tantamount to an adjudication of 'legal liability' on the part of . . . UFI."[39]  Accordingly, it vacated this Court's grant of summary judgment.

However, it remanded with instructions to consider whether Mutual Marine could otherwise establish UFI's legal liability.   Specifically, it stated that the First Agreement, if properly executed, may have rendered "UFI liable for three-quarters of the judgment against ITO and the City . . . ."[40]  If that agreement did establish legal liability, "then the *Ernish* adjudication would have determined not liability, but the amount for which UFI was legally liable, thereby constituting an 'ultimate net loss' for which General Star was liable under its policy."[41]  Pursuant to the Second Circuit's remand, therefore, this Court must determine whether the First Agreement was properly executed, and thus, whether it rendered UFI legally

---

[38]     *National Union*, 2007 WL 2701990, at *2.

[39]     *National Union*, 585 F.3d at 673.

[40]     *Id.* at 673.

[41]     *Id.* at 673-74.

liable as required by the GenStar Policy.

## B.    Execution of The First Agreement

New York Civil Practice Law and Rule ("CPLR") § 2104 permits an

attorney to enter into a settlement agreement on behalf of his or her client. It

provides:

> An agreement between parties or *their attorneys* relating to any
> matter in an action, other than one made between counsel in open
> court, is not binding upon a party unless it is in a writing
> subscribed by him *or his attorney* or reduced to the form of an
> order and entered.[42]

While the parties agree that UFI's attorney, Kenyon, signed the First

Agreement on behalf of UFI, they disagree as to whether Kenyon had the authority

to do so. Under New York law, a settlement agreement entered into by a client's

attorney is binding upon that client if the attorney had actual or apparent authority

at the time the agreement was executed.[43]

Both parties have submitted evidence supporting their view as to

whether Kenyon had actual authority. Dudley Loveland, who was president of UFI

at all relevant times, has submitted a declaration asserting that Kenyon kept Dudley

---

[42]    CPLR § 2140 (emphasis added).

[43]    *See Davidson v. Metropolitan Transit Auth.*, 844 N.Y.S.2d 359, 360
(2d Dep't 2008) (citing *Hallock v. State*, 64 N.Y.2d 224, 231 (1984)).

-11-

informed of his settlement negotiations with the City and ITO,[44] that Dudley knew

of the primary terms of the First Agreement,[45] and that he knew UFI would be

bound by the agreement.[46] GenStar, pointing to an earlier deposition wherein

Loveland stated that he did not recall authorizing Kenyon to execute the First

Agreement, argues that this declaration has been manufactured after-the-fact in

order to hold GenStar liable in this action.[47] The discord between Loveland's

deposition testimony and his declaration make it impossible for this Court to

determine on summary judgment whether Loveland actually authorized Kenyon to

execute the First Agreement.

However, while there remain disputed issues of material fact as to

whether Kenyon had actual authority when the First Agreement was executed, the

undisputed facts establish that he did have apparent authority. New York courts

have consistently found that an attorney's appearance in open court constitutes "an

implied representation by [a client] to [an opposing party] that [the client's

---

[44]     *See* Declaration of Dudley E. Loveland ¶¶ 11-12.

[45]     *See id.* ¶ 13 ("Ultimately Kenyon informed me during a telephone
conversation that he had reached an agreement with counsel for ITO whereby UFI
would be responsible for 75% of any settlement or verdict in favor of Ernish and
ITO would be responsible for 25%.").

[46]     *See id.* ¶14.

[47]     *See* GenStar Opp. at 14-15.

-12-

attorney] had authority to bind him to [a] settlement [agreement]."[48] Mutual

Marine has represented to this Court that Kenyon made at least eight different

appearances on behalf of UFI in the *Ernish* Action, including one on the day that

the First Agreement was executed, and has submitted four conference orders from

that action showing Kenyon as UFI's attorney of record.[49] Combined with

Kenyon's participation in the settlement discussions, these appearances

demonstrate as a matter of law that Kenyon had apparent authority to enter into the

First Agreement on behalf of UFI.[50]

---

[48]     *Hallock*, 64 N.Y.2d at 231-32. *Accord Davidson*, 844 N.Y.S.2d at 360 (stating that an attorney had apparent authority, as a matter of law, to enter into a stipulation of settlement where the "attorney had a lengthy involvement in this case, engaging in settlement negotiations and appearing at pretrial conferences"); *Arvelo v. Multi Trucking Inc.*, 599 N.Y.S.2d 301, 302 (2d Dep't 1993 ) ("Similarly, the plaintiffs' claim that their counsel lacked the authority to bind them to the settlement is not well taken. Indeed, their employment of counsel to represent them throughout this litigation and to appear on their behalf at the conference in question precludes this contention.").

[49]     *See* 4/13/10 Letter to the Court from Patrick Brophy and Attachments ("Brophy Letter"). Mutual Marine originally argued that apparent authority is established solely by the fact that Kenyon engaged in settlement negotiations and signed a settlement agreement. *See* Mutual Marine's Reply Memorandum of Law in Support of Motion for Summary Judgment at 7. While there is no New York case law supporting this proposition, at this Court's request, Mutual Marine subsequently submitted documentation that Kenyon appeared in open court on behalf of UFI multiple times during the *Ernish* Action.

[50]     In response to the Brophy Letter, GenStar submitted a letter stating that during the trial of the underlying *Ernish* Action Kenyon represented on multiple occasions that he was co-counsel for the City and ITO. *See* 4/16/10 Letter

-13-

## C.    Mutual Marine as a Volunteer

GenStar argues that regardless of whether Kenyon had authority to

execute the First Agreement it is not obligated to reimburse Mutual Marine for the

seven hundred thousand dollars it paid to National Union because the payment was

"in excess of its policy limits," and thus, it was acting as a volunteer.[51]  Under New

York law:

> [W]hen an insurer who is not acting under a mistake of material
> fact or law assumes the defense and indemnification of an insured
> when there is no obligation to do so, that insurer becomes a
> volunteer with no right to recover the monies it paid on behalf of
> the insured.[52]

While GenStar is therefore correct that it would not be obligated to reimburse

Mutual Marine if it had made the payment as a "volunteer," the fact that Mutual

Marine's payment was beyond its policy limits does not render the payment

voluntary.

---

to the Court from Christopher Bradley and Attachments. Because all of these
representations occurred after the First Agreement was executed, they are
irrelevant to whether Kenyon had apparent authority to execute the agreement on
behalf of UFI. The First Agreement was executed prior to the commencement of
the trial. At that time, there is no genuine issue of material fact as to whether
Kenyon was appearing in open court as counsel for UFI.

[51]    GenStar Opp. at 22.

[52]    *Merchants Mut. Ins. Group v. Travelers Ins. Co.*, 806 N.Y.S.2d 813,
815 (4th Dep't 2005).

-14-

Instead, as both the Second Circuit and this Court have held, Mutual Marine was fulfilling its obligations under the Second and Third Agreements. In the September 14 opinion, I held that the payment was not voluntary because "[b]oth of the agreements made by Mutual Marine were contracts made for consideration, namely, the assignment of each party's rights in the litigation."[53] The Second Circuit also found GenStar's argument "to be without merit."[54] According to the circuit court, because the *Ernish* Action did not render UFI legally liable (as I had held it did), the adjudication could not give UFI "a claim against [GenStar, its excess insurer,] that it could assign to Mutual Marine" under the Second Agreement.[55] Nevertheless, it stated that UFI would have had a claim against GenStar that it could have assigned to Mutual Marine "if the legal liability of UFI was established under the First Agreement or otherwise."[56] Accordingly, it "le[ft] it for the district court on remand to determine . . . whether Mutual Marine was acting as a volunteer when it paid an amount in excess of its policy limit."[57]

Because UFI was legally liable under the First Agreement, it had a

---

[53]     *National Union*, 2007 WL 2701990, at *3.

[54]     *National Union*, 585 F.3d at 676.

[55]     *Id.* at 677.

[56]     *Id.*

[57]     *Id.*

-15-

claim against its excess insurer, GenStar, that it could assign to Mutual Marine
under the Second Agreement. Furthermore, as discussed in the September14
opinion, the Third Agreement was also entered into for valid consideration. In
return for Mutual Marine's payment of the seven hundred thousand dollars,
National Union dismissed its suit against both Mutual Marine and UFI and
assigned Mutual Marine its rights against GenStar. Accordingly, Mutual Marine
was not acting as a volunteer when it paid the seven hundred thousand dollars, but
was acting pursuant to its obligations under the Second and Third Agreements.

## D.    GenStar's Other Arguments

GenStar makes two other arguments – both of which are without
merit. *First*, it argues that Mutual Marine violated the fiduciary duty that primary
insurers owe to excess insurers by approving the First Agreement.[58] As discussed,
though, it is UFI's, not Mutual Marine's, assent to the First Agreement that
renders it binding. *Second*, GenStar argues that it has a cause of action for legal
malpractice against Kenyon's law firm – Bentancourt, Van Hemmen & Greco.[59]
GenStar did not plead that claim in this action and has not provided sufficient
evidence to support it. Moreover, even if GenStar had done so, a malpractice claim

---

[58]    *See* GenStar Opp. at 23.

[59]    *See id.* at 23-24.

-16-

against UFI's counsel would not alter its liability under the GenStar Policy.[60]

Accordingly, these arguments are insufficient to prevent a grant of summary

judgment in Mutual Marine's favor.

## VI.   CONCLUSION

For the foregoing reasons, Mutual Marine's motion for summary

judgment is granted. The Clerk of the Court is directed to close this motion

(Docket No. 78) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 19, 2010

---

[60]      GenStar also argues that the GenStar Policy was breached because it did not assent to the First Agreement. *See* GenStar Opp. at 25. This argument has already been rejected by both this Court, *National Union*, 2007 WL 2701990, at *2, and the Second Circuit, *National Union*, 585 F.3d at 674-75. Because this holding was not disturbed by the Second Circuit, I will not revisit it.

-17-

## -Appearances-

**For Universal Fabricators, Inc., New York Marine and General Insurance Company and Mutual Marine Office, Inc.:**

Patrick W. Brophy, Esq.
McMahon, Martine & Gallagher, LLP
90 Broad Street, 14th Floor
New York, New York 10004
(212) 747-1230

**For General Star National Insurance Company:**

Christopher T. Bradley, Esq.
Marshall, Conway, Wright & Bradley, P.C.
116 John Street
New York, New York 10038
(212) 619-4444